## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| PAUL SCOTT, | |
| *Plaintiff,* | |
| v. | Civil Action No. 3:12cv271 |
| BIERMAN, GEESING, WARD & WOOD, LLC, et al., | |
| *Defendants.* | |

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION TO DISMISS PORTIONS OF THE COMPLAINT

Defendant law firm BWW Law Group, LLC, formerly known as Bierman, Geesing, Ward & Wood, LLC ("**BWW**") and defendant trustee Equity Trustees, LLC ("**Equity**"), by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, make the following points and cite the following authorities in support of their *Motion to Dismiss Portions of the Complaint.*

## I.
## INTRODUCTION

Plaintiff filed his complaint (the "**Complaint**") alleging that Defendants violated sections of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, (the "**FDCPA**") when BWW mailed him certain notices in connection with a potential foreclosure. Plaintiff's allegations as to Equity, and as to parts of two counts facing BWW, are merely conclusory and are contradicted by the exhibits attached to the Complaint. Therefore, all claims against Equity should be dismissed, and part of Count I and all of Count IV should be dismissed as to BWW.

## II.
## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). The Supreme Court of the United States set forth the standard of review for Rule 12(b)(6) motions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citations omitted], a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *See Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, [citation omitted], on the assumption that all the allegations in the complaint are true (even if doubtful in fact) [citations omitted].

Elaborating further, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) (internal citations omitted), the Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as

true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

Likewise, this Court need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir.1979). The court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor must it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009).

A Court may consider facts outside the contents of a complaint on a motion to dismiss without converting the motion to one for summary judgment in certain instances. *Secretary of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). In reviewing a request for dismissal of a complaint under Rule 12(b)(6), a district court may properly take judicial notice of matters of public record. *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (citing *Papasan*, 478 U.S. at 268 n.1). A district court may consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic. *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006); *Moore v. Flagstar Bank*, 6 F. Supp. 2d 496 (E.D. Va. 1997).

## III.
## SUMMARY OF FACTUAL ALLEGATIONS

1.      In 2005, Plaintiff borrowed $498,400 from Wells Fargo Bank, N.A. for a "mortgage" on real property.  Complaint ¶ 9.

2.      Under the terms of the "mortgage", Plaintiff and his wife executed a deed of trust ("**Deed of Trust**"); however, only Plaintiff signed the related adjustable rate promissory note (the "**Note**") in favor of Wells Fargo Bank, N.A.   Complaint ¶¶ 9, 10 and **Exhibit D** to Complaint (which includes the Note).

3.      Defendant BWW is a law firm and the principal purpose of its business is the collection of debts.  Complaint ¶ 4.

4.      Defendant Equity is a company "whose sole purpose is to serve as the substitute trustee" for mortgage loans that are referred to BWW.  Complaint ¶ 5.

5.      Attached to the Complaint as **Exhibit A** is a letter sent to Plaintiff from BWW that provides a payoff figure for all amounts due on Plaintiff's mortgage (the "**Mortgage Debt**"). The letter is dated April 14, 2011.

6.      Attached to the Complaint as **Exhibit B** is a letter sent to Plaintiff from BWW dated April 26, 2011.  The letter identifies "US Bank, National Association, as Indenture Trustee for Bear Stearns ARM Trust 2005-9, Mortgage-Backed Notes, Series 2005-9" as the Beneficiary of the Mortgage Debt.  The letter further states:

> The Beneficiary hereby informs you that the Promissory Note originally payable to Wells Fargo Bank, NA . . . is unavailable as of the date of mailing this letter and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of this letter.
> . . . .
> This letter is not an admission that the original Promissory Note is permanently lost and may not be construed as such.  The intent of this letter is to advise the recipients of their rights and remedies

under Virginia law if the original Promissory Note is unavailable
prior to the foreclosure sale.

7.      Attached to the Complaint as **Exhibit C** is a letter dated July 29, 2011, which
BWW sent to Surovell, Isaacs, Peterson & Levy, PLC for Plaintiff.  This letter notifies Plaintiff
that the Beneficiary has scheduled a foreclosure sale:

> Please be advised that the holder of the beneficial interest of the
> deed of trust has directed the Substitute Trustee to sell the property
> by foreclosing in accordance with the terms of the attached
> advertisement.  In accordance with Code of Virginia of 1950, as
> amended, Section 55-59.1, or as a courtesy, you are hereby notified
> of same at least fourteen (14) days prior to such sale. . . .  Equity
> Trustees, LLC, the Substitute Trustee will offer the Property for
> sale at public auction . . . .

8.      The Deed of Appointment of Substitute Trustee (the "**Substitution of Trustee**"),
which appoints Equity as substitute trustee under the Deed of Trust, was enclosed with **Exhibit
C**.  On April 25, 2011, a Vice President of Loan Documentation executed the Substitution of
Trustee for Wells Fargo Bank, N.A., as Servicing Agent for US Bank, National Association, as
Indenture Trustee for Bear Stearns ARM Trust 2005-9, Mortgage-Backed Notes, Series 2005-9
(the "**Bear Stearns Trust**").  That document identifies the Bear Stearns Trust as "the owner and
holder of the [N]ote secured by said Deed of Trust." *See* **Exhibit C**, pp. 2, 3.

9.      Attached to the Complaint as **Exhibit D** is a letter from BWW to Ms. Kelly of
Surovell, Isaacs, Peterson & Levy, PLC purporting to provide verification of Plaintiff's debt in
connection with the Deed of Trust and Note.  The letter states, in part, that "[t]he beneficial
interest in the [D]eed of [T]rust is now held by US Bank National Association, as Indenture
Trustee for Bear Stearns ARM Trust 2005-9, Mortgage-Backed Notes, Series 2005-9."  It further
states, that "[o]ur office is in possession of the original Adjustable Rate Note and a copy of the
Adjustable Rate Note is enclosed for your review."

10.     Mr. Scott claims four violations of the FDCPA arising from the correspondence and actions of the "Defendants."   He seeks statutory damages, actual damages, attorneys' fees and costs.

## IV.
## ARGUMENT

The Fair Debt Collection Practices Act prohibits a debt collector from using abusive or unfair means to collect a consumer debt.   Plaintiff alleges that Defendants violated various sections of the FDCPA[1] by mailing letters to Plaintiff (or his counsel) and proceeding with foreclosure activity on Plaintiff's property.   Complaint ¶¶ 50–65.   For several reasons, these allegations fail to support claims against Equity for any violations of the FDCPA or against BWW for certain of the violations alleged in Count I of the Complaint and all of the violations alleged in Count IV of the Complaint.

**A.     Plaintiff Fails to State Any Claim for Violation of the Fair Debt Collection Practices Act against Equity (Counts I–IV).**

The entire Complaint should be dismissed as to Equity because:  (1) Equity Trustees did not send the letters or take the actions that Plaintiff claims violated the FDCPA; (2) Equity is not a debt collector under the FDCPA; and (3) Equity was authorized to foreclose on Plaintiff's property and should not be required to prove this authorization.

---

[1]     Specifically, Plaintiff alleges that Defendants made misrepresentations in violation of §§ 1692e(2)(A), 1692e(5), and 1692e(10) (Count I); that Defendants failed to meet the disclosure requirements of § 1692g(a)(2) (Count II); that Defendants failed to cease collection activity pursuant to § 1692g(b) (Count III); and that Defendants had no right to attempt to foreclose or transfer the property in violation of § 1692f(6) (Count IV).

1.   **Equity neither sent the letters nor took the actions that Plaintiff claims violated the Fair Debt Collection Practices Act.**

Plaintiff alleges that "Defendants", including Equity, sent letters including misrepresentations and nondisclosures, and took action in violation of the Fair Debt Collection Practices Act; however, the exhibits to the Complaint belie these assertions.  Plaintiff's action rests on four letters and their enclosures, attached to the Complaint as **Exhibits A–D**.  A cursory examination of these exhibits demonstrates that Equity did not send any of these letters.[2]  In fact, Plaintiff makes no direct allegations that Equity took any action at all.  Instead, Plaintiff attempts to obfuscate Equity's lack of involvement in conclusory fashion by alleging that Equity "was operating as an alternate voice and alter ego of BGWW."  Complaint ¶ 5.  Such a conclusion, unsupported by factual allegations, fails to state a claim against Equity that is "plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. at 1949-50 (2009); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (stating that a court is not required to accept a legal conclusion couched as a factual allegation).

It is a basic principle of Virginia law that corporations are separate and distinct entities; as such, a corporation's actions generally will not be attributed to its owners, parents, subsidiaries, or affiliates.  *See Perpetual Real Estate Servs. Inc. v. Michaelson Props. Inc.*, 974 F.2d 545, 547–48 (4th Cir. 1992); *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987); *Beale v. Kappa Alpha Order*, 192 Va. 382, 395, 64 S.E.2d 789, 796 (1951).  This principle both supports and is founded in "vital economic policy."  *Beale*, 192 Va. at 395, 64 S.E.2d at 796 ("The fundamental concept of a corporation is that it is a separate entity created under the law to enable a group of persons to limit their liability in a joint

---

[2]      Certainly it can be alleged that the Notice of Foreclosure Sale, **Exhibit C**, was sent on Equity's behalf, but it does not change the fact that BWW sent the communication.  All issues concerning the propriety of this Notice are addressed *infra* in Parts IV.A.2 and A3.

venture . . . ."); *see also, Perpetual Real Estate*, 974 F.2d at 548; *Cheatle*, 234 Va. at 212, 360 S.E.2d at 831.   Therefore, Virginia courts construe any request to ignore this principle as an "extraordinary exception." *Beale*, 192 Va. 396–97, 64 S.E.2d at 797–98; *Cheatle*, 234 Va. at 212; 360 S.E.2d at 831; *see also Perpetual Real Estate*, 974 F.2d at 548 ("Virginia courts have assiduously defended this 'vital economic policy,' lifting the veil only in 'extraordinary' cases.").

To warrant this exception, a plaintiff must allege and prove **facts** demonstrating that: (1) the corporation was an alter ego, alias, stooge, or dummy, and (2) the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime. *Perpetual Real Estate*, 974 F.2d at 548; *Cheatle*, 234 Va. at 212–13, 360 S.E.2d at 831; *Beale* 192 Va. 396–97, 64 S.E.2d at 797–98.   Plaintiff's conclusory statements do not even approach the level of fact-based pleading required to prevail on a "pierce the veil" theory.

The instant matter is analogous to *SEC v. Woolf*, No. 1:08cv235, 2011 U.S. Dist. LEXIS 144966 (E.D. Va. Dec. 13, 2011).   In *Woolf*, the plaintiff asserted only that the defendants were "alter egos" to support its causes of action.   *Id.* at *3.   The Court granted the defendants' motion to dismiss claims founded on an alter ego theory, holding: "[T]hese claims are mere labels and conclusory allegations that cannot survive a Rule 12(b)(6) challenge . . .   [Plaintiff] has not alleged facts satisfying either element required to pierce the corporate veil under an alter ego theory."   *Id.* at *33.   As in *Woolf*, Plaintiff has not alleged any facts sufficient to warrant the extraordinary remedy he seeks.   In fact, Plaintiff has alleged no facts to support his claims; he merely recites labels and makes the conclusory assertion that Equity is an alter ego of BWW.

Plaintiff fails to state a claim against Equity in any counts of the Complaint, and so all claims against it must be dismissed.

    **2.**    **Equity is not a "debt collector" within the meaning of the Fair Debt Collection Practices Act, except for the purposes of § 1692f(6).**

In the alternative, should this Court find that somehow Equity is liable for the letters sent by BWW, Counts I, II, and III also fail to state a claim against Equity because only § 1692f(6) of the FDCPA applies to a person or entity whose sole function is to serve as substitute trustee in a foreclosure. Counts I, II and III allege violations of §§ 1692e and 1692g of the FDCPA. Those sections require allegations and proof that the accused defendant is a debt collector **AND** that the accused defendant communicated with the plaintiff in connection with the collection of a debt. *See* 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."); 15 U.S.C. § 1692g(a)(2) ("Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . ."); and 15 U.S.C. § 1692g(b) ("If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt . . . .").

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). That section further provides that "for the purposes of § 1692f(6), such term *also includes* any person who uses any instrumentality of interstate commerce or the mails in any business the principal enforcement of which is the enforcement of security interests." *Id.* (emphasis added).

In interpreting the additional provisions, courts have held that Congress intended to omit a class of people who only enforce security interests from the ambit of the FDCPA. *See, e.g.,*

*Piper v. Portnoff Law Assocs.*, 396 F.3d 227, 236 (3d Cir. 2005) ("Section 1692a(6) thus recognizes that there are people who engage in the business of repossessing property, whose business does not primarily involve communicating with debtors in an effort to secure payment of debts."); *Jordan v. Kent Recovery Servs., Inc.*, 731 F. Supp. 652, 657 (D. Del. 1990) ("It thus appears that Congress intended an enforcer of a security interest, such as a repossession agency, to fall outside the ambit of the FDCPA except for the provisions of § 1692f(6).").

In *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006), the Fourth Circuit Court of Appeals addressed the scope of the additional provision. The Court interpreted it as "an inclusion to the term debt collector" in that "[i]t serves to include as debt collectors, for the purposes of § 1692f(6), those who *only* enforce security interests." *Id.* at 378 (emphasis added); *see also id.* ("This provision applies to those whose *only* role in the debt collection process is the enforcement of a security interest."). Thus, a trustee who only enforces security interests is a debt collector only for the purposes of § 1692f(6).

In *Moore v. Commonwealth Trs., LLC*, No. 3:09cv731, 2010 U.S. Dist. LEXIS 113724 (E.D. Va. Oct. 25, 2010), this Court dismissed a plaintiff's allegations that a trustee violated the FDCPA while acting in his capacity as trustee. The only communication at issue in *Moore* was "a letter that informed [plaintiff] that [plaintiff]'s home would be sold at public auction . . . and these documents did not state that they were from a debt collector." *Id.* at *3. The Court determined that "[t]he letter did not constitute 'collection activity' nor was the [defendant] a 'debt collector' as defined in the FDCPA." *Id.* at *12. District Courts throughout the Commonwealth have reached the same conclusion when presented with similar facts. *See Blagogee v. Equity Trustees, LLC*, No.1:10cv13, 2010 U.S. Dist. LEXIS 114233, at *16 (E.D. Va. July 26, 2010) (concluding that the trustee was not a debt collector under the FDCPA

because it never made an express demand for payment or indicated that it was collecting a debt); *Horvath v. Bank of New York, N.A.*, No. 1:09cv1129, 2010 U.S. Dist. LEXIS 19965, at *8–9 (E.D. Va. Jan. 29, 2010) ("Mortgage servicing companies and trustees exercising their fiduciary duties enjoy broad statutory exemptions from liability under the FDCPA."); *Blick v. Wells Fargo Bank, N.A.*, No. 3:11cv81, 2012 U.S. Dist. LEXIS 41266, at *27 (W.D. Va. March 27, 2012) (concluding that the trustee's notice of foreclosure did not fall within the statutory ambit of the FDCPA).

Plaintiff has made nothing more than conclusory allegations that Equity takes any part in the debt collection process other than through the enforcement of security interests. In fact, Plaintiff candidly admits that Equity's "*sole purpose* is to serve as the substitute trustee for mortgage loans that are referred to [BGWW]." Complaint ¶ 4 (emphasis added). Of the four Exhibits attached to Plaintiff's Complaint, only the Notice of Foreclosure Sale suggests any action by Equity at all. *See* **Exhibit C**. This Notice must be sent under Virginia law to enforce a security interest in real property. S*ee* Va. Code Ann. § 55-59.1(A) ([T]he trustee . . . shall give written notice of the time, date and place of any proposed sale in execution of a deed of trust . . . by personal delivery or by mail to (i) the present owner of the property to be sold at his last known address as such owner and address appear in the records of the secured party . . . ."). Furthermore, this Notice does not bear any of the hallmarks of debt collection activity: it does not make express demand for payment; it does not give notice of the person to whom the debt should be paid; it does not provide a reinstatement quote or itemizations of amounts owed; and it does not indicate that it is an attempt to collect a debt. *Cf. Wilson*, 443 F.3d at 374–75; *Goodrow v. Friedman & MacFadyen, P.A.*, 788 F. Supp. 2d 464, 469 (E.D. Va. 2011).

Therefore, Counts I, II and III should be dismissed as to Equity, because those Counts allege violations of FDCPA sections that pertain only to debt collectors conducting debt collection activity.

### 3.    Equity was authorized to act and should not be required to prove this authorization.

Section 1692f(6) of the FDCPA provides, in part, that it is a violation of the FDCPA to "tak[e] or threaten[] to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through any *enforceable security interest*." 15 U.S.C. § 1692f(6)(A) (emphasis added). In Count IV of the Complaint, Plaintiff alleges that both Equity and BWW violated this provision.   In support of Count IV that "US Bank, National Association, as Indentured Trustee for Bear Stearns ARM Trust 2005-9, Mortgage-Back Notes, Series 2005-9 had no authority to appoint the Defendants as a substitute trustee as the note was purportedly lost at that time." Complaint ¶ 62.

Under Virginia law, two parties have the authority to appoint a substitute trustee:  the beneficiary of the deed of trust and the note holder. *See* Va. Code Ann. § 55-59(9) ("The party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee or trustees for any reason . . . ."). Plaintiff has not pleaded that the Bear Stearns Trust was not the party secured by the Deed of Trust.  Plaintiff instead tiptoes around this inconvenient truth. Where the April 14, 2011 Letter disclosed "EMC Mortgage Corporation" as the secured creditor, **Exhibit A**, Plaintiff alleges that the letter "does not disclose the name of the creditor to whom the debt is owed."  Complaint ¶ 27.   Later, Plaintiff repeats this allegation:   "EMC Mortgage Corporation was never a creditor to whom the debt was owed, despite the Defendants' initial correspondence indicating otherwise."  Complaint ¶ 46.  Plaintiff does not address the Bear

Stearns Trust with the same certainty—if at all. The April 26, 2011 letter and all subsequent correspondence identify the Bear Stearns Trust as the beneficiary of the Deed of Trust. *See* **Exhibits B–D**; Complaint ¶¶ 29, 32–33, 39. But Plaintiff focuses his attentions on whether the Bear Stearns Trust held the Note. *See* Complaint ¶¶ 47, 62. In fact, Plaintiff only mentions the Bear Stearns Trust's status as beneficiary in a footnote: "Mr. Scott does not concede that [the Bear Stearns Trust] is the actual beneficiary, but instead asserts that Defendants never had a lost note affidavit from any possible beneficiary." Complaint, fn.2. This footnote is not an allegation that the Bear Stearns Trust is *not* the beneficiary of the Deed of Trust. At most, Plaintiff has pleaded "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 129 S.Ct. at 1949. Therefore, Plaintiff fails to state a plausible claim for relief.

In the alternative, the note holder could have authorized the substitution of trustee. Plaintiff does not allege that neither the Bear Stearns Trust nor its agent held the Note, and nothing in the Complaint leads to this conclusion. The Note is included as part of **Exhibit D** to the Complaint, and it had the proper indorsement(s).[3] *See* Va. Code Ann. § 8.3A-205. Because Wells Fargo Bank, N.A. is the agent of US Bank, it had authority to execute the Substitution of Trustee, no matter which of the two entities physically possessed the Note.

Furthermore, BWW's April 26, 2011 letter stated that "the Promissory Note . . . is *unavailable* as of the date of mailing of this letter." Complaint ¶ 28; **Exhibit B** (emphasis added). It doesn't say that no one had the Note, nor can the letter be read to infer that the Note was irretrievable. In the same letter, BWW specifically rejects that inference by stating: "This letter

---

[3] The Note appears to include a special indorsement from Wells Fargo Bank, N.A. to US Bank as indenture trustee for the Bear Stearns Trust. An alternative possibility is that the Note is indorsed in blank by Wells Fargo Bank, N.A. Whatever the case, Wells Fargo Bank, N.A. would have had authority to execute the Substitution of Trustee as holder – either as bearer or agent for the beneficiary.

13

is not an admission that the original Promissory Note is permanently lost and may not be construed as such." **Exhibit B**. In fact, Plaintiff's own allegations contradict his conclusion. In response to BWW's April 26, 2011 letter, Plaintiff states that, "[u]pon information and belief, the original note evidencing Mr. Scott's indebtedness has not been lost, misplaced or destroyed." Complaint ¶ 30.

The Substitution of Trustee contains a sworn statement that the Bear Stearns Trust held the Note. *See* **Exhibit C** ("WHEREAS, the [Bear Stearns Trust] is the owner and holder of the note secured by said Deed of Trust."); *see also* Complaint ¶ 39. This Deed has been duly recorded with the Circuit Court of Arlington County. A copy of the recorded Substitution of Trustee is attached hereto as **EXHIBIT 1**. This document is *prima facie* evidence that the Bear Stearns Trust held the Note – a fact which has not been rebutted or denied in the Complaint. *See* <u>Va</u>. <u>Code</u> <u>Ann</u>. § 8.01-389(C) ("[R]ecitals of any fact in any deed or deed of trust conveying any interest in real property shall be prima facie evidence of fact."). Plaintiff relies on **Exhibit B** for the proposition that the Bear Stearns Trust did not have possession of the Note, but **Exhibit B** does not say this; and **Exhibit C** directly contradicts that conclusion. Once again, at best, Plaintiff recites "facts that are 'merely consistent with' a defendant's liability," *Iqbal*, 129 S.Ct. at 1949, and does not state a plausible claim that Equity acted or threatened to act without authority.

Finally, Equity should not be required to prove that it had the note holder's authority. In *Pham v. Bank of New York*, No. 1:12cv2, U.S. Dist. LEXIS 51194 (E.D. Va. Apr. 10, 2012), the Court considered a trustee's motion to dismiss the plaintiff's claims that the note holder did not authorize the trustee to conduct foreclosure proceedings. *Id.* at *12. After acknowledging that the "show me the note" theory has been widely rejected as "contrary to Virginia's non judicial

14

foreclosure laws," the Court held that "a substitute trustee . . . should not be required to prove in court that it has the noteholder's authority." *Id.* The Court reasoned:

> To conclude otherwise would allow borrowers to compel judicial intervention in any foreclosure proceeding where a deed of trust has changed hands or a substitute trustee has been appointed. This result would be plainly contrary to Virginia law, which allows a trustee to foreclose on a loan in default, even if the original note cannot be found, without first seeking a court order.

*Id.* at *12–13 (citing *Horvath v. Bank of New York, N.A.*, 641 F.3d at 623).

Here, Plaintiff attached authentic copies of the Substitution of Trustee and the Note to the Complaint. These documents fully support Equity's authority to conduct a foreclosure sale, and this Court should not countenance baseless claims founded on a "show me the note" theory, whether couched in FDCPA terms or otherwise.

For all of these reasons, any one of which defeats Plaintiff's claim that Equity lacked authority to pursue foreclosure as substitute trustee, this Court must dismiss Count IV of the Complaint.

**B.    Plaintiff Fails to State Claims for Violations of the Fair Debt Collection Practices Act against BWW (partial Count I and Count IV).**

Part of Count I and all of Count IV against BWW should be dismissed because: (1) BWW did not misrepresent that the Note had been lost, misplaced, or destroyed, and BWW's statement does not constitute a material violation of the FDCPA; and (2) BWW did not take or threaten action to dispossess or disable Plaintiff's property without authority.

**1.    BWW did not misrepresent the Note had been lost, misplaced, or destroyed, nor was BWW's statement about the location of the Note material.**

In Count I of the Complaint, Plaintiff alleges, in part, that BWW violated the FDCPA by "[f]alsely stating in the April 26, 2011 letter that the note had been lost, misplaced or destroyed."

Complaint ¶ 51. Plaintiff claims that this statement violated subsections of FDCPA § 1692e, which prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt." On its face, the letter to which this allegation refers is neither false nor material.

There is contradiction between Plaintiff's interpretation of BWW's words and BWW's actual words contained in **Exhibit B** to the Complaint. In the letter, BWW states: "the Promissory Note . . . is unavailable as of the date of mailing of this letter." **Exhibit B**. This letter fairly informed Plaintiff that BWW did not have the Note at the time it sent **Exhibit B** to Plaintiff—a true fact which Plaintiff does not allege to be false. BWW's letter very clearly did not represent that the Note was lost, stolen, or misplaced; envisioned that the Note was in the hands of another party (such as the note holder); and merely advised Plaintiff of his state law rights to take action, if he felt that he was subject to a claim to enforce the instrument by a party other than the beneficiary. *See* **Exhibit B** ("This letter is not an admission that the . . . Note is permanently lost and may not be construed as such. The intent of this letter is to advise the recipients of their rights and remedies under Virginia law if the original Promissory Note is unavailable prior to the foreclosure sale."). The FDCPA does not prohibit communications or actions which go beyond the requirements of the law to provide consumers with greater protections and more information than required, and any opinion interpreting the FDCPA in such manner would be contrary to the act's primary purpose. *See, e.g. Wahl v. Midland Credit Mgmt.*, 556 F.3d 643 (7th Cir. Ill. 2009) (rejecting plaintiff's theory that a series of letters that included "more information" in the form of a breakdown of the components of a debt balance violated the FDCPA).

Plaintiff argues that because Wells Fargo Bank, N.A. as agent for the Bear Stearns Trust

executed the Substitution of Trustee on April 25, 2011, and BWW later produced the Note, it should be concluded that the complained-of statement was false.[4] Yet, BWW never asserted that the Note was lost, misplaced, or destroyed, and Plaintiff's assertion that BWW's statements were false is nothing more than an unfounded inference and an illogical deduction based upon a misreading of **Exhibit B**.

Even if the Court determines that BWW's statement was false, an implication in a correspondence that a promissory note may have been lost, misplaced, or destroyed is not material. False but immaterial statements are not actionable under sections of the FDCPA that prohibit the making of false, deceptive or misleading representations. Federal courts throughout the country have applied a materiality requirement to the FDCPA by concluding that false but non-material representations are not likely to mislead even the least sophisticated consumer. *See Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010) ("[W]hether conduct violates §§ 1692e or 1692f requires an objective analysis that considers whether 'the least sophisticated debtor would likely be misled by a communication.' We now conclude that false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable . . . ."); *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) ("Materiality is an ordinary element of any federal claim based on a false or misleading statement. We do not see any reason why materiality should not equally be required in an action based on §1692e." (citations omitted)); *see also Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009); *Starosta v. MBNA America Bank, N.A.*, 244 Fed. App'x 939, 2007 WL 2007944 (11th Cir. 2007). In *Warren v. Sessoms & Rogers, P.A.*, No. 10-2105, 2012 U.S. App. LEXIS 552, at *18 (4th Cir. Jan. 11, 2012), the Fourth Circuit Court of Appeals

---

[4]      As discussed *supra* Part IV.A.3, possession of the Note was not necessary for the Bear Stearns Trust to appoint Equity as substitute trustee.

acknowledged that FDCPA "violations grounded in 'false representations' must rest on material misrepresentations."

The alleged misrepresentation here involves the location of the Note. Plaintiff does not allege that he does not owe the money due under the Note, that he is not in default under the Note, or that some party other than the beneficiary or its agent had the right to receive payment. Plaintiff does not allege that a foreclosure by Equity would not have resulted in the satisfaction or partial satisfaction of his mortgage debt. Whether the Bear Stearns Trust actually had physical possession of the Note is irrelevant, so long as some third-party did not acquire the Note or the right to payment under it. Virginia Code section 55-59.1 specifically provides that a trustee can proceed to foreclosure without a note. *See* Va. Code Ann. § 55-59.1(B). As discussed above, Virginia courts reject "show me the note" arguments where the mortgagor owes the lender and can state no plausible facts to the contrary. *Pham v. Bank of New York*, No. 1:12cv2, U.S. Dist. LEXIS 51194 (E.D. Va. Apr. 10, 2012). A representation that the Note was unavailable on April 25, 2011 (four months before a scheduled, and later cancelled, foreclosure auction) simply is not material.

Because BWW's statements regarding the location of the Note are neither false nor material, they cannot support a claim for violation of any subsection of FDCPA § 1692e.

### 2. BWW did not take or threaten action to dispossess or disable Plaintiff's property; in the alternative, BWW was authorized to alert Plaintiff to the planned foreclosure.

Section 1692f(6) of the FDCPA provides, in part, that it is a violation of the FDCPA to "tak[e] or threaten[] to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through any *enforceable security interest*." 15 U.S.C. § 1692f(6)(A) (emphasis added). BWW

did not take or threaten to take action to enforce a security interest. This is not a function that BWW serves—Equity, on the other hand, is an entity that enforces security interests. *See* Complaint ¶ 5 (Equity's "sole purpose is to serve as the substitute trustee for mortgage loans" that are referred to BWW).

Plaintiff alleges that the Bear Stearns Trust "had no authority to appoint **Defendants** as a substitute trustee as the note was purportedly lost at that time." Complaint ¶ 62. (emphasis added). Yet, BWW was not, and does not represent itself to have been, appointed substitute trustee. Defendants direct the Court's attention to the Complaint's exhibits. The letter in **Exhibit C** states: "Please be advised that the holder of the beneficial interest of the deed of trust has directed the Substitute Trustee to sell the property by foreclosing. . . . Equity Trustees, LLC, the Substitute Trustee will offer the Property for sale at public auction." In the Substitution of Trustee enclosed with that letter, the Bear Stearns Trust appoints Equity as the substitute trustee. *See* **Exhibit C**. BWW derives its authority to send notices regarding the defaulted mortgage and related unpaid balance from the servicer and the Note—not the Substitution of Trustee. Plaintiff has not and cannot allege that BWW acted without this authority.

If, however, BWW's actions are perceived to fall within the scope of § 1692f(6), BWW was authorized to take or threaten foreclosure action for the reasons stated above, wherein it is explained that Equity was properly appointed as substitute trustee through reference to the authentic exhibits attached to the Complaint. *See supra* Part IV.A.3. If the Court agrees that Equity had such authority, foreclosure notices and actions taken by BWW as attorney for substitute trustee Equity, were similarly authorized.

For the above-stated reasons, Plaintiff fails to state a claim against BWW under § 1692f(6) of the FDCPA, so Count IV of the Complaint against BWW must be dismissed.

## V.
## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss Portions of the Complaint and award them such other and further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

BWW LAW GROUP, LLC
and
EQUITY TRUSTEES, LLC

By Counsel

/s/ Andrew Biondi
Andrew Biondi, Esquire (VSB No. 48100)
Eric C. Howlett, Esquire (VSB No. 82237)
SANDS ANDERSON PC
1111 East Main Street, Suite 2400 (23219)
Post Office Box 1998
Richmond, Virginia 23218-1998
Telephone: (804) 648-1636
Facsimile: (804) 783-7291
E-mail: abiondi@sandsanderson.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I further certify that on this date a true and correct copy of the foregoing and the NEF will be mailed, first-class, postage fully prepaid, to:

Dale W. Pittman, Esq.
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb Street
Petersburg, Virginia  23803
Telephone:  804-861-6000
Facsimile:  804-861-3368
dale@pittmanlawoffice.com

Leonard Anthony Bennett, Esq.
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia  23606
Telephone:  757-930-3660
Facsimile:  757-930-3662
lenbennett@cox.net

John C. Petersen, Esq.
Surovell Isaacs Petersen & Levy PLC
4010 University Drive, Suite 200
Fairfax, Virginia  22030
Telephone:  703-251-5400
Facsimile:  703-591-9285
jpetersen@smillaw.com

Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia  22314
Telephone:  703-273-6080
Facsimile:  888-892-3512
matt@clalegal.com

Kristi Cahoon Kelly, Esq.
Surovell Isaacs Peterson & Levy PLC
4010 University Drive, Suite 200
Fairfax, Virginia  22030
Telephone:  703-277-9774
Facsimile:  703-591-2149
kkelly@smillaw.com

/s/ Andrew Biondi
Andrew Biondi, Esquire (VSB No. 48100)
SANDS ANDERSON PC
1111 East Main Street, Suite 2400 (23219)
Post Office Box 1998
Richmond, Virginia 23218-1998
Telephone: (804) 648-1636
Facsimile: (804) 783-7291
E-mail:  abiondi@sandsanderson.com
*Counsel for Defendants*