IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

PAUL SCOTT,

      *Plaintiff,*

v.

BIERMAN, GEESING,
WARD & WOOD, LLC, et al.,

      *Defendants.*

Civil Action No. 3:12cv271

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN
## SUPPORT OF MOTION TO DISMISS PORTIONS OF THE COMPLAINT

Defendant law firm BWW Law Group, LLC, formerly known as Bierman, Geesing,

Ward & Wood, LLC ("**BWW**") and defendant trustee Equity Trustees, LLC ("**Equity**"), by

counsel, state the following as their memorandum in reply to Plaintiff's brief in response to

Defendants' *Motion to Dismiss Portions of the Complaint* (this "Reply Memorandum").

## I.
## REPLY TO PLAINTIFF'S INTRODUCTION

Defendants reply to Plaintiff's introduction and state that Defendants are not "two parts to

a debt collection foreclosure mill." Plaintiff's Brief, p. 1. Rather, as alleged in the Complaint,

each is a separately formed Virginia limited liability company. Complaint ¶¶ 4-5. BWW is a

law firm that focuses on creditors' rights, and the "sole purpose" of Equity is to serve as a

substitute trustee. Complaint ¶ 5.

## II.
## ARGUMENT

Defendants do not take time here to revisit every argument made in their opening brief.

Instead, this Reply Memorandum focuses on Plaintiff's defenses to the insufficiencies of the Complaint and the reasons Plaintiff's arguments miss the mark.

**A.   Defendants' challenge is to the quality, not the quantity, of Plaintiff's allegations.**

Plaintiff attempts to recast Defendants' position to be that Plaintiff merely failed to "beef up" its claims with more facts when he did not.  Plaintiff's Brief, pp. 2–3.  It is clear, however, that Defendants' focus is on the mismatch between the "facts" alleged and both the causes of action Plaintiff invokes and the liability Plaintiff seeks to attach.  While Plaintiff has taken the liberty to explain to the Court that Defendants "real position" is to disagree with facts that should be taken as true (Plaintiff's Brief, p. 4), Defendants rightly focus the Court's attention on the exhibits Plaintiff attached to the Complaint.  These documents serve as the basis for the allegations, so Plaintiff's characterizations of them are meaningless.

**B.   Plaintiff's allegation that Equity is a general "debt collector" is legally incorrect and contrary to Fourth Circuit jurisprudence.**

Plaintiff attempts to misconstrue the Fair Debt Collection Practices Act and Fourth Circuit jurisprudence in an effort to hold Equity liable under the entire Act.  An examination of the express language of the statute and interpreting case law reveals why this allegation must fail.

The Fair Debt Collection Practices Act contemplates two categories of coverage:  (1) general "debt collectors" who are subject to the entire FDCPA; and (2) enforcers of security interests who are subject only to section 1692f(6).  The express language of the FDCPA's definition of a "debt collector" establishes these categories:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . .  **For the purpose of section 1692f(6) of this title, such term also**

2

> **includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.**

15 U.S.C. § 1692a(6) (emphasis added).  This language implies that at least some enforcers of security interests must not be general "debt collectors" under the Act.  Any other interpretation would render the last sentence of the section superfluous, and "courts should disfavor interpretations of statutes that render language superfluous."  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992).

Contrary to Plaintiff's insinuations, the Fourth Circuit's opinion in *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006), does not abolish the FDCPA's categories of coverage—it addresses the potential for overlap between them.  The facts in *Wilson* are crucial to understanding the significance of the opinion.  Prior to foreclosing on Wilson's property, Draper & Goldberg ("D&G") wrote Wilson "to announce that she was in default on her loan" and "that the Lender [had] accelerated the debt."  *Id.* at 374–75.  Pursuant to the FDCPA, that letter informed Wilson that D&G was attempting to collect a debt.  D&G also sent Wilson a "VALIDATION OF DEBT NOTICE" pursuant to the Act.  *Id.* at 375.  After D&G had commenced foreclosure proceedings, it sent additional letters that provided for repayment and stated that they were attempts to collect a debt.  *Id.*  The Court concluded that these actions constituted debt collection activity.[1]  *See id.* at 376 ("Defendants' actions *surrounding* the foreclosure proceedings were attempts to collect that debt.").  Despite this, D&G argued that it was exempt from full FDCPA coverage because it was "engaged in a business 'the principal

---

[1]      The facts in *Wilson* involved a foreclosure on a **Maryland** property under a **Maryland** deed of trust.  *Wilson*, 443 F.3d at 380 n.1.  Maryland's quasi-judicial foreclosure process is significantly different that Virginia's wholly non-judicial foreclosure process and results in a monetary judgment against the borrower for a specific dollar amount, commonly called a deficiency judgment.

purpose of which is the enforcement of security interests.'"[2]  *Id.* at 378. The issue before the Court, therefore, was not whether **all** substitute trustees are general "debt collectors" under the FDCPA; instead, the court considered whether a substitute trustee **can** be a general "debt collector" under the FDCPA because it **also** engages in debt collection activity.  The Court's holding reflects this distinction:  "We hold that . . . Defendants **can still be** "debt collectors" even if they were **also** enforcing a security interest."  *Id.* at 378–79 (emphasis added).

The Fourth Circuit's opinion in *Wilson* clearly preserves the second category of coverage under the FDCPA.  *See id.* at 378 ("This provision applies to those whose *only* role in the debt collection process is the enforcement of a security interest."); *id.* ("It serves to include as debt collectors, for the purposes of § 1692f(6), those who only enforce security interests."). Consistent with *Wilson*, courts throughout the Fourth Circuit have held that a substitute trustee which only enforces security interests does not fall within the general ambit of the FDCPA.  *See Moore v. Commonwealth Trs., LLC*, No. 3:09cv731, 2010 U.S. Dist. LEXIS 113724, at *12–13 (E.D. Va. Oct. 25, 2010) (holding that a notice of foreclosure by itself does not constitute "collection activity" sufficient to subject a substitute trustee to full coverage under the FDCPA); *Blagogee v. Equity Trustees, LLC*, No.1:10cv13, 2010 U.S. Dist. LEXIS 114233, at *16 (E.D. Va. July 26, 2010) (concluding that Equity was not a debt collector under the FDCPA because it never made an express demand for payment or indicated that it was collecting a debt); *Blick v. Wells Fargo Bank, N.A.*, No. 3:11cv81, 2012 U.S. Dist. LEXIS 41266, at *27 (W.D. Va. Mar. 27, 2012) (concluding that Equity's notice of foreclosure did not fall within the statutory ambit of the FDCPA); *see also Heinemann v. Jim Walter Homes, Inc.*, 47 F. Supp. 2d 716, 722 (N.D. W. Va. 1998), *aff'd* 173 F.3d 850 (4th Cir. 1999) ("Since the trustees were not collection on the

---

[2]      This statement is substantially different from Plaintiff's assertion that D&G argued that "it was acting solely as a substitute trustee."  Plaintiff's Brief, p. 5.

debt at that time but merely foreclosing on the property pursuant to the deed of trust, these activities do not fall within the terms of the FDCPA."); *Holland v. Chase Home Finance LLC*, No. 2:11cv223, 2011 U.S. Dist. LEXIS 102197 at *22–23 (E.D. Va. Sept. 9, 2011) ("Plaintiff alleges that [defendants] serve as substitute trustee in foreclosure sales for mortgage lenders. . . . Plaintiff cannot maintain an action against PFC and Shapiro & Burson, as repossession agents, under the Act.").[3]

Plaintiff refuses to address and engage these opinions. Instead, Plaintiff counters with a footnote from a single decision from North Carolina, *Johnson v. BAC Home Loans Servicing, LP*, No. 5:10cv271, 2011 U.S. Dist. LEXIS 112010 (E.D.N.C. Sept. 29, 2011). Plaintiff's reliance on the *Johnson* opinion is misplaced.[4] In *Johnson*, the Court considered the substitute trustee a general "debt collector" based only on the fact that its "Notice of Hearing Prior to Foreclosure of Deed of Trust" and "Notice of Foreclosure Sale" stated that each was a "COMMUNICATION FROM A DEBT COLLECTOR." *Id.* at *24. In *Boosahda v. Providence Dane LLC*, No. 10-1933, 2012 U.S. App. LEXIS 1828, at *8–9 (4th Cir. Jan. 31, 2012), the Fourth Circuit has since held that use of such language is not sufficient to allege liability under the FDCPA. In considering the plaintiff's argument that defendant's inclusion of the FDCPA

---

[3]     Likewise, courts in the Fourth Circuit have held that repossession agents are subject only to section 1692f(6) of the FDCPA. *See Eley v. Robie Evans, III*, 476 F. Supp. 2d 531, 534 (E.D. Va. 2007) ("Eley failed to allege the necessary components, both in law and fact, for such parties to be liable as debt collectors under the FDCPA. Repossession agents and agencies, whose only role in the debt collection process are [sic] the enforcement of security interests, generally fall outside of the FDCPA." (citing *Wilson*, 443 F.3d at 378)); *Khepera-Bey v. Santander Consumer USA, Inc.*, No. WDQ-11-1269, 2012 U.S. Dist. LEXIS 75040, at *31 (D. Md. May 30, 2012) ("Because Khepera-Bey alleged that Renaissance's only role was as a repossessor, not a debt collector, the FDCPA claims against it will be dismissed, except for the § 1692f(6) claim.")
[4]     For what it's worth, the Court received no "meaningful assistance" from the substitute trustee, who failed to brief this point. *Johnson v. BAC Home Loans Servicing, LP*, No. 5:10cv271, 2011 U.S. Dist. LEXIS 112010, at *21 n.4 (E.D.N.C. Sept. 29, 2011).

disclaimer constituted an admission, the Fourth Circuit held:

> Put simply, a debt collector should not be penalized for taking the precaution of including the disclaimer within its initial written communication to the debtor, in the event the debt is subject to the FDCPA. In any case, Providence's disclaimer is not sufficient to satisfy Boosahda's burden of showing that the credit card debt was a consumer debt.

*Id.* at *9. Furthermore, and contrary to Plaintiff's contentions, the Court in *Johnson* dismissed all allegations against the substitute trustee because the plaintiff failed to state a plausible claim for relief. *Compare id.* at 46 ("The Motion to Dismiss the Amended Complaint pursuant to 12(b)(6) filed by Defendant Substitute Trustee Services, Inc. . . . [is] ALLOWED."), *with* Plaintiff's Brief, p. 9 ([A]llegations even less ornate than this case are sufficient to survive a Rule 12(b)(6) challenge." (citing *Johnson*, 2011 U.S. Dist. LEXIS 112010)). As such, this case is unpersuasive and insufficient to contradict the preponderance of case law holding that trustees in Virginia do not fall within the scope of the FDCPA when conducting a non-judicial sale.

Plaintiff has pleaded, in no uncertain terms, that Equity's "sole purpose is to serve as the substitute trustee for mortgage loans that are referred to [BWW]." Complaint ¶ 5. The only action plausibly attributable to Equity is the Notice of Foreclosure Sale. *See generally* **Exhibit C.** That Notice was sent pursuant to <u>Va</u>. <u>Code</u> <u>Ann</u>. § 55-59.1(A) and makes no attempt to collect a debt.[5] Therefore, under the clear language of the FDCPA, as applied in *Wilson*, Equity is only subject to the FDCPA for the purposes of § 1692f(6). Defendants have already addressed Plaintiff's failure to allege a plausible claim under § 1692f(6) at length in their opening brief, *see* Defendants' Brief, pp. 12–15, 18–20, and so it does not bear repeating here.

---

[5]   Plaintiff's allegations that "<u>both</u> Defendants" regularly collect or attempt to collect debts owed or due or asserted to be owed or due another, and each is a 'debt collector' within the meaning the FDCPA" are legal conclusions couched as factual allegations and need not be accepted by this Court. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

To summarize, Plaintiff categorically fails to state a claim against Equity for violation of any of the general "debt collector" provisions of the FDCPA, and he fails to allege facts able to support a claim that Defendants violated § 1692f(6), applicable to persons enforcing security interests.

**C.      Plaintiff's additional theories of liability for Equity are ineffective and inapposite.**

Recognizing the deficiencies in his arguments under *Wilson*, Plaintiff concocts additional factual and legal allegations in an attempt to hold Equity liable for BWW's actions.   These allegations are inapposite and fail to bolster Plaintiff's claim.

In support of his "alter ego" theory, Plaintiff introduces new factual allegations. *See* Plaintiff's Brief, p. 10.  These allegations are not before the Court and should not be considered on Defendants' Motion.  Nevertheless, conclusory allegations that Equity is a "shell entity," or that it "shares the same registered agent" as BWW, are insufficient to support Plaintiff's efforts to pierce the corporate veil because they do not address the second prong of the test, the existence of an unlawful purpose. *See, e.g., Oliver v. Omega Protein Inc.*, No. 3:10cv47, 2010 U.S. Dist. LEXIS 120294, at *11 (E.D. Va. Oct. 21, 2010) ("Although Omega may have pleaded facts suggesting that Northern Neck was the 'alter ego, alias, stooge, or dummy' of GNI, Omega does not allege *any* facts to show that 'the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime.'").

Notwithstanding the newly-injected factual allegations, Plaintiff insists that a veil-piercing analysis is not necessary to hold one Virginia limited liability company liable for the actions of another.  In so arguing, Plaintiff cites only one decision from the Fourth Circuit, *Johnson*, 2011 U.S. Dist. LEXIS 112010—and he vastly overstates its applicability to the facts before this Court.  While acknowledging that the Fourth Circuit has not yet addressed this issue,

the Court in *Johnson* observed that "federal courts . . . have found that *employees* of debt collectors can be held personally liable under the FDCPA." *Id.* at *25 (emphasis added). *Id.* at *25 (emphasis added). Accordingly, the Court found that an *individual employee* of a debt collection firm could be personally liable under the FDCPA. *Id.* at *26; *see also* Plaintiff's Memorandum at 15. The *Johnson* opinion cannot—and should not—be read to impute liability from a general "debt collector" limited liability company to a separate entity that only enforces security interests.

Plaintiff's remaining citations are likewise inapplicable to the facts before this Court. *See, e.g., Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433 (6th Cir. 2008) (finding *sole member of law firm* individually liable under the FDCPA); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000) (finding that a general partner of a "debt collector" partnership may be vicariously liable under the FDCPA *pursuant to general principles of partnership law*); *Brumbelow v. Law Offices of Bennet & Deloney, P.C.*, 372 F. Supp. 2d 615 (D. Utah 2005) (abrogating the corporate form to hold *individuals engaged in debt collection through a corporation* personally liable under the FDCPA). Plaintiff's attempts to hold Equity liable for the actions of BWW are misleading at best.

**D.   Exhibit B is not false, misleading or deceptive under the Fair Debt Collection Practices Act and Virginia law.**

Plaintiff contends that "Defendants" are liable for the April 26, 2011 letter sent by BWW to Plaintiff that provided Plaintiff with notice of his statutory rights in the event the Note was unavailable at the time of foreclosure. Plaintiff claims **Exhibit B** is misleading and deceptive to the least sophisticated consumer. That claim is contrary to the Complaint's exhibits and the law.

First, "Defendants" did not send the letter—BWW did. One need only look at the letter to see that BWW subscribed it and identified itself as "Attorneys for Beneficiary."[6]  It identifies "US Bank, National Association, as Indenture Trustee for Bear Stearns ARM Trust 2005-9, Mortgage Backed Notes, Series 2005-9" as the beneficiary.  So, BWW is the disclosed agent of "US Bank." This only makes sense.  <u>Va</u>. <u>Code Ann</u>. § 55-59.1(B) places the obligation on the beneficiary of a deed of trust to give the notice contained in **Exhibit B** to the mortgagor.  There is no basis for vicarious liability between BWW and Equity with regard to **Exhibit B**, and a ruling to the contrary would turn bedrock legal principles upside down. The Court need not examine the matter further; Equity should be dismissed with prejudice from any claim relating to **Exhibit B** on this fact alone.

Bolstering Defendants' position, **Exhibit B** does not constitute debt collection activity. 15 U.S.C. § 1692e provides that "A debt collector may not use any false, deceptive or misleading representation or means <u>in connection with the collection of any debt</u>." (emphasis added).  In *Blick v. Wells Fargo Bank, N.A.*, the Court considered the same letter contained in **Exhibit B** and determined that it was not sent in connection with the collection of any debt:

> The most BGWW's letter says about the debt is that "the Beneficiary hereby informs you that the Promissory Note . . . is unavailable as of the date of mailing this letter." Compl. Ex. B.  To construe BGWW's informational notice as an express or implied demand for payment would require the Court to strain considerably in its interpretation of the letter.

---

[6]     On an FRCP 12(b)(6) motion to dismiss, a court need not "'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)); *Wright v. Fahey*, 2009 U.S. Dist. LEXIS 6017 at *2 (E.D. Va. Jan. 28, 2009).

2012 U.S. Dist. LEXIS 41266, at *27-28 n.8.   The Court need only look at **Exhibit B** to recognize that its subject matter is restricted to notices provided for in Va. Code Ann. § 55-59.1(B).   **Exhibit B** does not:  (1) mention the amount of the debt; (2) demand payment of a debt; or (3) solicit a response regarding a debt.   *Cf. Wilson*, 443 F.3d at 374-75.   And, while there is an FDCPA-type warning at the top of **Exhibit B**, the Fourth Circuit has recently held that inclusion of such a warning is not to be considered evidence of debt collection activity.   *See Boosahda v. Providence Dane LLC*, 2012 U.S. App. LEXIS 1828, at *9 ("[A] debt collector should not be penalized for taking the precaution of including the disclaimer within its initial written communication to the debtor, in the event the debt is subject to the FDCPA.").   Thus, **Exhibit B** is not an attempt to collect a debt.

Third, in order to find that **Exhibit B** violates § 1692e this Court must also find that it contains a false, misleading or deceptive representation.   It does not.   Plaintiff argues that a statement made by BWW on behalf of US Bank that the original Note was "*unavailable* as of the date of the mailing of this letter" is made false because "the original note has not been lost, misplaced or destroyed."   **Exhibit B** (emphasis added); Complaint ¶ 30.   However, **Exhibit B** does not say that the original note was "lost, misplaced or destroyed"—these are Plaintiff's words, and they do not appear in **Exhibit B**.   In fact, **Exhibit B** says the opposite: "This letter is not an admission that the original promissory note is lost and may not be construed as such . . . [t]he Beneficiary may locate the original Promissory Note at any time."   For this letter to constitute a false statement, Plaintiff would have to allege as fact that the note was "available" for production at the time the letter was mailed.   That allegation does not appear in the Complaint.   Thus, based on the disconnect between the allegations in the Complaint and the actual language in the letter, Plaintiff does not plausibly allege the making of a false statement.

Plaintiff also conflates the beneficiary (US Bank National Association, as Indenture Trustee for Bear Stearns ARM Trust 2005-9, Mortgage Backed Notes, Series 2005-9) with the servicer (Wells Fargo Bank, N.A.). **Exhibit C** includes the substitution of trustee deed, and that document is signed by a vice president of Wells Fargo Bank on April 25, 2011. Plaintiff argues that a statement made by BWW on behalf of US Bank that the original Note is unavailable to it is made false by the fact that Wells Fargo Bank may have been in possession of it the day before BWW made the statement. There is nothing false, misleading or deceptive about this. Disregarding the fact that a Wells Fargo employee executed the substitution of trustee deed, Plaintiff alleges that U.S. Bank signed it and that Defendants should have known that U.S. Bank signed it. Complaint ¶¶ 47-48. Plaintiff's premise is wrong and contradicted by his own exhibit;[7] therefore, the conclusion that Defendants made a misrepresentation based on this premise cannot state a plausible claim for relief.

Notwithstanding the above, Plaintiff attempts to convince this Court that some of the content of **Exhibit B** is inconsistent with Va. Code Ann. § 55-59.1(B), and, therefore, **Exhibit B** is false, misleading or deceptive. The Court should decline this invitation. To begin, **Exhibit B** is not inconsistent with that statute, the pertinent portion of which provides:

> If a note or other evidence of indebtedness secured by a deed of trust is lost **or** for any reason cannot be produced and the beneficiary submits to the trustee an affidavit to that effect, the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the person required to pay the instrument that the instrument is unavailable and a request for sale will be made of the trustee upon expiration of 14 days from the date of mailing of the notice.

Va. Code Ann. § 55-59.1(B) (emphasis added).

---

[7]     Again, a court need not accept as true allegations contradicted by a plaintiff's own exhibit. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

On the face of **Exhibit B**, beneficiary US Bank, by its attorney BWW, informs Plaintiff that the Note is unavailable on April 26, 2011. At the time BWW sends **Exhibit B** to Plaintiff, the Note cannot be produced by US Bank—the beneficiary and party to whom the statute applies. To hold that US Bank or its trustee is responsible to know that a remote employee of one of US Bank's servicing agents has the original Note at any given time sets a near impossible standard. Indeed, deed of trust notes are freely transferrable, so the statute gives a broad definition of what constitutes unavailability—**"lost or for any reason cannot be produced."** *Id.* (bold emphasis added). Plaintiff seeks for the Court to apply a very narrow and unbending interpretation of unavailability (namely, that the original note can NEVER be produced). It is not inconsistent with the statute for a beneficiary and trustee to tell a mortgagor that a note is unavailable in this situation, so a § 1692e claim founded upon this premise must fail.

Next, Plaintiff argues that as a threshold prerequisite to sending **Exhibit B**, BWW must have had in its possession an affidavit of lost note from US Bank. The statute does not say that. It says that in order for its trustee *to proceed to sale*, US Bank would first have to submit such an affidavit to the trustee. There is no requirement that BWW be in possession of the affidavit just in order to mail the notices contained in **Exhibit B**. The only condition that must exist for BWW to send **Exhibit B** is that the Note be "unavailable" as that term is defined in the statute, explained above. **Exhibit B** is not false, misleading or deceptive on its face, nor is it somehow made deceptive when considering it in conjunction with Va. Code Ann. § 55-59.1(B), based on the allegation that US Bank had not provided BWW with a lost note affidavit.

The free-market tenets, principles and practices of the law of negotiable instruments in Virginia were recently reaffirmed in this Circuit. *See, e.g., Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 626 (4th Cir. 2011) ("The Virginia legislature has decided to allow parties free

reign to assign and transfer notes and the deeds of trust accompanying them, and if Horvath thinks the legislature struck the balance wrong, it is for the legislature to correct it."). <u>Va. Code Ann.</u> § 55-59.1(B) reflects those well-established rules. The statute allows a trustee to move forward on behalf of a beneficiary, despite its not holding the original note. *See* <u>Va. Code Ann.</u> § 55-59.1(B) ("If the trustee proceeds to sale, the fact that the instrument is lost or cannot be produced shall not affect the authority of the trustee to sell or the validity of the sale."). Plaintiff proposes a standard under which § 1692e would be violated any time a beneficiary initially cannot locate a note and later comes to find it. Such an interpretation would place the agent for the beneficiary between Scylla and Charybdis whenever a beneficiary reported that it could not put its hands on the original note. The Fourth Circuit disfavors similar interpretations of the Fair Debt Collection Practices Act.[8]   Having (1) provided the debtor with notice of his rights on behalf of the deed of trust beneficiary; (2) waited fourteen days for the mortgagor to act, and (3) cancelled the foreclosure sale despite the fact that the original note was "produced" (*See* **Exhibit D** to Complaint, which includes a letter from BWW to Plaintiff's counsel enclosing the original Note), Defendants are being asked to pay legal fees and non-existent damages for following the applicable statute and best practices. In this era of mortgage securitization, rotating servicers, and agents like MERS, applying Plaintiff's proposed standard is unreasonable in light of Virginia's liberal non-judicial foreclosure statutes.

Lastly, as argued in Defendants' opening brief, unless a statement is material, it is not actionable under § 1692e. Recently, the Fourth Circuit approved the application of a materiality standard in examining statements for potential violation of § 1692e. Agreeing with many other

---

[8]   *See Boosahda*, 2012 U.S. App. LEXIS 1828, *8 ("Moreover, if the use of the statutorily required disclaimer is sufficient to establish an FDCPA claim, debt collectors will be placed in a conundrum, exposed to liability for both including the disclaimer and for omitting it.").

courts that have addressed the issue, the Court concluded that, in order to be false, deceptive or misleading, the statement assailed must be "material". *See Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365 (4th Cir. N.C. 2012). In *Warren v. Sessoms*, the Court cited *Hahn v. Triumph P'ships LLC*, 557 F.3d 755 (7th Cir. Ill. 2009), in which the Seventh Circuit Court of Appeals held:

> We do not see any reason why materiality should not equally be required in an action based on §1692e. The statute is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect). This is the upshot of our conclusion in *Wahl* 2009 U.S. App. LEXIS 3530 at *7) [sic] that, "[i]f a statement would not mislead the unsophisticated consumer, it does not violate the [Act]--even if it is false in some technical sense." A statement cannot mislead unless it is material, so a false but non-material statement is not actionable.

*Id.* at 757-758 (citations omitted).

A statement about the present unavailability of the original Note made on behalf of the beneficiary four months before the foreclosure sale would not mislead an unsophisticated consumer so as to prevent him from making some choice intelligently. To the contrary, **Exhibit B** lays out for Plaintiff the recourse to which he may be entitled in the event the trustee does proceed to sale under Va. Code Ann. § 55-59.1(B) and Plaintiff believes he may be subject to multiple claims. **Exhibit B** does not prevent intelligent choice; it informs intelligent choice.

Furthermore, failure to comply with the requirements of Va. Code Ann. § 55-59.1 are immaterial as a matter of law. Whereas non-compliance with some requirements of the statutory foreclosure scheme can invalidate a foreclosure, *see, e.g.*, Va. Code Ann. § 55-59.2 (requiring strict compliance), the notice requirements under Va. Code Ann. § 55-59.1 do not affect the validity of a foreclosure: "Failure to comply with the requirements of notice contained in this

section shall not affect the validity of the sale and a purchaser for value at such shall be under no duty to ascertain whether such notice was validly given." Va. Code Ann. § 55-59.1(C). In other words, even if a trustee completely disregards the Va. Code Ann. § 55-59.1 notices, the mortgagor cannot unwind the foreclosure.

The statements contained in **Exhibit B** that Plaintiff alleges violate § 1692e are not materially false, misleading or deceptive, and because of this, Plaintiff fails to state a claim for violation of the FDCPA for any of **Exhibit B**'s content as to either of the Defendants.

**E.     Plaintiff has failed to state a claim under § 1692f(6) because Defendants were lawfully authorized to foreclose.**

Plaintiff bases the entirety of his claim under § 1692f(6) on the fact that the Note was allegedly lost when Equity was appointed substitute trustee. This is a mistake. The Code of Virginia clearly provides that two parties can appoint a substitute trustee. *See* Va. Code Ann. § 55-59(9) ("The party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby, shall have the right and power to appoint a substitute trustee . . . ."). The Substitution of Trustee Deed that comprises part of **Exhibit C** is signed by an employee of Wells Fargo Bank, N.A. "as Servicing Agent for US Bank, National Association . . . ." US Bank, by its agent, made the appointment, and Plaintiff cannot make any plausible claim to the contrary. Additionally, it is the right of the party with the power to enforce the note who substitutes the trustee. A mortgagor like Plaintiff has no standing or right to challenge the substitution. *Pham v. Bank of New York*, No. 1:12cv2, 2012 U.S. Dist. LEXIS 51194, at *12-13 (E.D. Va. Apr. 10, 2012). Therefore, Plaintiff fails to state a claim in Count IV of the Complaint.

## III.
## CONCLUSION

In conclusion, Defendants focus the Court on the exhibits to the Complaint, which largely defeat Plaintiff's allegations. Equity did not send the complained-of letters and cannot be liable for the acts of others. **Exhibit B** is supposed to form the basis for a § 1692e claim, but it does not constitute debt collection activity; the *Wilson* opinion is not so all-encompassing that it removes the requirement to consider the sender and the substance of individual communications. Furthermore, the letter that is the focus of the argument – **Exhibit B** – is not false, misleading or deceptive… or even material. Lastly, <u>Va</u>. <u>Code</u> <u>Ann</u>. § 55-59(9) permits a deed of trust beneficiary to substitute a trustee, so because the beneficiary made the substitution, Plaintiff's claim that Defendants lacked authority to foreclose or threaten foreclosure fails to state a claim under § 1692f(6) on the face of the Complaint.

**WHEREFORE**, for the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss Portions of the Complaint and award them such other and further legal and equitable relief as this Court deems just and proper.

> **Respectfully submitted,**
>
> **BWW LAW GROUP, LLC**
> **and**
> **EQUITY TRUSTEES, LLC**
> **By Counsel**
>
>      */s/* Andrew Biondi
> Andrew Biondi, Esquire (VSB No. 48100)
> Eric C. Howlett, Esquire (VSB No. 82237)
> SANDS ANDERSON PC
> 1111 East Main Street, Suite 2400 (23219)
> Post Office Box 1998
> Richmond, Virginia 23218-1998
> Telephone: (804) 648-1636
> Facsimile: (804) 783-7291
> E-mail: abiondi@sandsanderson.com
> *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I further certify that on this date a true and correct copy of the foregoing and the NEF will be mailed, first-class, postage fully prepaid, to:

Dale W. Pittman, Esq.
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb Street
Petersburg, Virginia 23803
Telephone:  804-861-6000
Facsimile:  804-861-3368
dale@pittmanlawoffice.com

Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
Telephone:  703-273-6080
Facsimile:  888-892-3512
matt@clalegal.com

John C. Petersen, Esq.
Surovell Isaacs Petersen & Levy PLC
4010 University Drive, Suite 200
Fairfax, Virginia 22030
Telephone:  703-251-5400
Facsimile:  703-591-9285
jpetersen@smillaw.com

Leonard Anthony Bennett, Esq.
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Telephone:  757-930-3660
Facsimile:  757-930-3662
lenbennett@clalegal.com

Kristi Cahoon Kelly, Esq.
Surovell Isaacs Peterson & Levy PLC
4010 University Drive, Suite 200
Fairfax, Virginia 22030
Telephone:  703-277-9774
Facsimile:  703-591-2149
kkelly@smillaw.com

Susan Rotkis, Esq.
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Telephone:  757-930-3660
Facsimile:  757-930-3662
srotkis@clalegal.com

/s/ Andrew Biondi
Andrew Biondi, Esquire (VSB No. 48100)
SANDS ANDERSON PC
1111 East Main Street, Suite 2400 (23219)
Post Office Box 1998
Richmond, Virginia 23218-1998
Telephone: (804) 648-1636
Facsimile: (804) 783-7291
E-mail:  abiondi@sandsanderson.com
*Counsel for Defendants*